# THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JASON FINNEGAN,

      Plaintiff,

v.

MICHAEL SMITH and
ERICA OSWALD,

      Defendants.

3:16-CV-1416
(JUDGE MARIANI)

## MEMORANDUM OPINION

## I. INTRODUCTION

Plaintiff's Motion for Costs and Attorney's Fees (Doc. 29) is pending before the Court. Plaintiff filed the motion following the Clerk's entry of judgment in favor of Plaintiff and against Defendant Michael Smith. (Doc. 28 at 1.) With the Motion, Plaintiff's attorney, Johanna L. Gelb, Esquire, seeks attorney's fees in the amount of $44,200 based on 110.5 hours expended and compensation at the rate of $400 per hour. (Doc. 29 at 2 ¶ 16.) She seeks costs in the amount of $842.05. (*Id.* at 3 ¶ 17.) Defendant Smith, represented by Harry T. Coleman, Esquire, objects to the fee request on two main bases: Plaintiff's Itemized Statement (Doc. 32-1) is inadequate to determine if the time indicated applied only to Defendant Smith or if the time also applied to his codefendant Erica Oswald (Doc. 43 at 9); and Ms. Gelb has not properly supported her requested hourly rate, a rate which Defendant asserts is not reasonable for attorneys in this area (*id.* at 10-13). For the reasons discussed below, the Court concludes attorney's fees are properly awarded for

110.5 hours at a rate of $375 per hour and costs are properly awarded in the amount requested.[1]

## II. BACKGROUND

In the underlying action, Plaintiff filed a one count complaint pursuant to 42 U.S.C. § 1983 alleging that Defendants Michael Smith, a Plains Township police officer, and Erica Oswald, a Wilkes-Barre police officer, violated his Second Amendment, Fourth Amendment, and Fourteenth Amendment rights under the United States Constitution. (Doc. 1.) The Complaint factually alleges that Plaintiff called for police assistance after another driver threw an aluminum can at Plaintiff's vehicle and an altercation ensued between Plaintiff and the driver of the other vehicle. (*Id.* at 3-5 ¶¶ 7-28.) Plaintiff's Complaint further alleges that Defendant Smith was the first officer to respond to his call followed shortly thereafter by three Wilkes-Barre police officers, one of whom was Defendant Oswald. (*Id.* at 6-7 ¶¶ 32-41.) The interaction between Plaintiff and the responding officers took place in the parking lot of Lispi's Lounge. (*See id.* at 6-11 ¶¶ 30-75.) Allegations of improper treatment by Defendants while in the parking lot of Lispi's Lounge formed the basis of the alleged constitutional violations. (*Id.* at 9-14 ¶¶ 57-87.)

With motions to dismiss pending (Docs. 11, 13), Plaintiff's counsel filed a Request for Entry of Judgment on March 3, 2017, requesting entry of judgment against Defendant Michael Smith in the amount of $10,000 in accordance with Defendant Smith's offer of

---

[1] Defendant does not contest the costs requested.

judgment and Plaintiff's acceptance of same. (Doc. 25 at 1.) By Order of March 3, 2017, the Court ordered that Judgment be entered in favor of Plaintiff and against Defendant Smith for the sum of $10,000 "plus reasonable attorney's fees on the claim against Defendant Smith incurred to date." (Doc. 26 at 1.) The Clerk's judgment was entered on March 8, 2018. (Doc. 28.) Plaintiff's Motion for Costs and Attorney's Fees, accompanied by a supporting brief, was filed the next day. (Docs. 29, 30.)

In correspondence dated March 20, 2017, Plaintiff's counsel informed the Court that Plaintiff had settled the case against Defendant Oswald and requested that the Court issue a final closing order allowing the parties sixty days to consummate settlement. (Doc. 36 at 1.) On April 3, 2017, the Court entered an Order "based upon receipt of Attorney Gelb's letter (Doc. 36) informing the Court that the . . . action has been settled against Defendant Oswald, the last remaining defendant in this action." (Doc. 38 at 1.) The Court ordered that the action be dismissed without prejudice to the right to reinstate the action within sixty days if settlement was not consummated.[2] (*Id.*) The parties filed a Stipulation of Dismissal of Defendant Oswald Pursuant to F.R.C.P. 41(a)(1)(A)(ii) on May 3, 2017. (Doc. 44.)

### III. LEGAL STANDARD

As the prevailing party in a 42 U.S.C. § 1983 action, Plaintiff's recovery of attorney's fees is governed by 42 U.S.C. § 1988 which states that "the court, in its discretion, may

---

[2] By Order of May 10, 2017, the Court clarified that this was an administrative closing and "the dismissal subject to the costs and attorney's fees that the Court awards as a result of Plaintiff's Motion for Costs and Attorney's Fees." (Doc. 45 at 2.)

3

allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs." 42 U.S.C. § 1988(b). To assess a "reasonable attorney's fee," the reviewing court calculates the "lodestar amount" which is "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). The lodestar method yields a fee that is presumptively reasonable. *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 552 (2010). In *Hensley*, the Supreme Court explained that the lodestar calculation

> provides an objective basis on which to make an initial estimate of the value of a lawyer's services. The party seeking an award of fees should submit evidence supporting the hours worked and rates claimed. Where the documentation of hours is inadequate, the district court may reduce the award accordingly. The district court also should exclude from this initial fee calculation hours that were not "reasonably expended." S.Rep. No. 94–1011, p. 6 (1976). Cases may be overstaffed, and the skill and experience of lawyers vary widely. Counsel for the prevailing party should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission. "In the private sector, 'billing judgment' is an important component in fee setting. It is no less important here. Hours that are not properly billed to one's *client* also are not properly billed to one's *adversary* pursuant to statutory authority." *Copeland v. Marshall*, 205 U.S.App.D.C. 390, 401, 641 F.2d 880, 891 (1980) (en banc) (emphasis in original).

*Hensley*, 461 U.S. at 433–34.

Courts apply a burden-shifting analysis to calculate the lodestar--the party seeking attorney's fees has the burden to prove that its request for attorney's fees is reasonable with the submission of evidence supporting both the hours and rate claims. *Id.* at 433.

> In a statutory fee case, the party opposing the fee award then has the burden to challenge, by affidavit or brief with sufficient specificity to give fee applicants notice, the reasonableness of the requested fee. *Bell v. United Princeton Properties, Inc.*, 884 F.2d 713 (3d Cir.1989). The district court cannot "decrease a fee award based on factors not raised at all by the adverse party." *Id.* at 720; *see Cunningham v. City of McKeesport*, 753 F.2d 262, 267 (3d Cir.1985), *vacated on other grounds*, 478 U.S. 1015, 106 S.Ct. 3324, 92 L.Ed.2d 731, *reinstated*, 807 F.2d 49 (3d Cir.1986), *cert. denied*, 481 U.S. 1049, 107 S.Ct. 2179, 95 L.Ed.2d 836 (1987). Once the adverse party raises objections to the fee request, the district court has a great deal of discretion to adjust the fee award in light of those objections. *Bell*, 884 F.2d at 721.

*Rode v. Dellarciprete*, 892 F.2d 1177, 1183 (3d Cir. 1990).

The fee applicant must establish the claimed rate "with reference to 'the community billing rate charged by attorneys of equivalent skill and experience performing work of similar complexity.'" *Evans v. Port Auth. of New York & New Jersey*, 273 F.3d 346, 360–61 (3d Cir. 2001) (quoting *Student Public Interest Research Group v. AT & T Bell Laboratories*, 842 F.2d 1436, 1450 (3d Cir.1988)). As stated in *Watcher v. Pottsville Area Emergency Medical Service, Inc.*, 559 F. Supp. 2d 516, 521 (M.D. Pa. 2008), "[t]he Court should consider the experience and skill of the prevailing party's attorney, and compare the rates to those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." "[I]n most cases, the relevant rate is the prevailing rate in the forum of the litigation." *Interfaith Cmty. Org. v. Honeywell Int'l, Inc.*, 426 F.3d 694, 705 (3d Cir. 2005).

A fee applicant bears the burden of documenting the applicable hourly rate. *Id.* (citing *In re Tutu Wells Contamination Litigation*, 120 F.3d 368, 391 (3d Cir.1997)). The

5

reviewing court may not set attorney's fees based on a generalized sense of what is usual and proper but "must rely upon the record." *Smith v. Philadelphia Housing Authority*, 107 F.3d 223, 225 (3d Cir.1997) (quoting *Coleman v. Kaye*, 87 F.3d 1491, 1506 (3d Cir.1996)). As summarized in *Smith*, "[t]he plaintiff bears the burden of producing sufficient evidence of what constitutes a reasonable market rate for the essential character and complexity of the legal services rendered in order to make out a prima facie case." 107 F.3d at 225. "Once the plaintiff has made the prima facie showing with respect to the appropriate hourly rate, that rate may be contested, 'but only with appropriate record evidence. In the absence of such evidence, the plaintiff must be awarded attorneys' fees at her requested rate.'" *Evans*, 273 F.3d at 361 (quoting *Smith*, 107 F.3d at 225). "Hourly rates that were set for a specific attorney in previous court decisions do not generally constitute record evidence unless those rates were set for the same attorney and for the same type of work of a contemporaneous period." *Katona v. Asure*, No. 1:11-CV-1817, 2019 WL 636979, at *3 (M.D. Pa. Feb. 14, 2019) (citing *Smith*, 107 F.3d at 226; *Black v. Grievance Comm. v. Phila. Elec. Co.*, 802 F.2d 648, 652 (3d Cir. 1986), *vacated on other grounds*, 483 U.S. 1015 (1987)). "[W]hen 'the plaintiff has met his prima facie burden under the community market rate lodestar test, and the opposing party has not produced contradictory evidence, the district court may not exercise its discretion to adjust the requested rate downward.'" *Watcher*, 559 F. Supp. 2d at 521 (quoting *Ridley v. Costco Wholesale Corp.*, 217 Fed.Appx.

130, 139 (3d Cir. 2007)); see also *City of Scranton v. Davis*, No. CV 3:16-1727, 2018 WL 3126443, at *3 (M.D. Pa. June 26, 2018).

## IV. ANALYSIS

Ms. Gelb used the lodestar method to support the request for fees in the amount of $44,200: she presented an itemized statement in support of the 110.5 hours claimed and stated that her hourly rate is $400, a rate which she asserts is reasonable in the prevailing market. (Doc. 30 at 4-6: Doc. 32-1.) Defendant objects to both the rate and the number of hours claimed. (Doc. 43.)

**A.     Hourly Rate**

In support of the hourly rate requested, Ms. Gelb presents her own affidavit and affidavits from three other attorneys. (Docs. 31, 32-2, 32-3, 32-4.) She states that her hourly rate is $400 per hour. (Doc. 31 at 5 ¶ 28.) Regarding her general credentials, Ms. Gelb avers the following: she graduated from high school in three years; she graduated from Syracuse University in 1984 with a bachelor's degree in journalism and a bachelor's degree in English; she graduated from Syracuse University School of Law in May 1987; other than her first eight years of practice in insurance defense litigation, she has been a solo practitioner involved in civil rights and other litigation; and, throughout her thirty-year litigation practice, she has tried jury and non-jury civil cases in both state and federal court. (*Id.* at 5-6 ¶ 29 a-e.)

The additional affidavits are provided by three attorneys who practice in the Wilkes-Barre/Scranton area: Attorneys Barry Dyller, Kevin Dempsey, and John Gallagher. (Doc. 31 ¶ 30; Docs. 32-2, 32-3, 32-4.) Mr. Dyller stated the following: he does substantial civil rights litigation; his hourly rate is $450 per hour; he frequently provides affidavits from other attorneys; in his most recent fee petition, he obtained affidavits that $450 per hour was the prevailing rate in the Scranton/Wilkes-Barre area; in that case the District Court ultimately reduced his fee to $375; and "Attorney Gelb's hourly rate of $400 is completely reasonable and consistent with the prevailing market rate in the Wilkes-Barre/Scranton area." (Doc. 32-2 at 2 ¶ 4.) Mr. Dempsey stated that he was familiar with the prevailing market rates in the Scranton/Wilkes-Barre area, he believes the prevailing market rate in the area is $400, and, therefore, he believes Ms. Gelb's rate is reasonable. (Doc. 32-3 at 2 ¶¶ 10, 11.) Mr. Gallagher stated that he primarily represents interests of civil rights plaintiffs in the Scranton/Wilkes-Barre area, he believes the prevailing market rate in the area is $400, and, therefore, he believes Ms. Gelb's rate is reasonable. (Doc. 32-4 at 1-2 ¶¶ 4, 10, 11.)

Defendant contends that Ms. Gelb "has failed to establish a *prima facie* case that her requested hourly rate of four hundred dollars ($400.00) per hour is reasonable. In this regard, plaintiff's counsel has failed to make out a *prima facie* showing of the prevailing market rate," and instead focuses on the reasonableness of her own rate. (Doc. 43 at 10-11.) Defendant adds that, with respect to the issue of hourly rates, the Court "may consider its own knowledge and experience concerning reasonable and proper fees and may form an

independent judgment either with or without the aid of witnesses as to value.'" (*Id.* (quoting *Norman v. Housing Auth. Of Montgomery*, 836 F.2d 1292, 1303 (11th Cir. 1988)).) After noting that, in most cases, "the relevant rate is the prevailing rate in the forum of the litigation," (*id.* at 11 (citing *Interfaith Cmty. Org.*, 426 F.3d at 705)), Defendant asserts that Ms. Gelb's reference to the reasonableness of her fee is misguided (*id.*). Defendant adds "[i]t is noteworthy that there is a paucity of case law and documentation establishing the reasonable hourly rate for the Middle District of Pennsylvania Wilkes-Barre/Scranton vicinage." (*Id.*) Defendant then looks to Ms. Gelb's credentials, acknowledging that she is in her thirtieth year of the practice of law and stating that "although she has filed a number of actions in this Court, her trial experience and skill level warrants an hourly rate between $250.00 to $300.00." (Doc. 43 at 12.)

In support of his position, Defendant offers the Declaration of Frank Lavery, Jr., Esq. (Doc. 43-9.) The Declaration is dated December 9, 2015, and was previously offered in a Middle District proceeding on December 11, 2015. *See Souryavong v. Lackawanna County*, Civil Action No. 3:13-CV-1534 ARC (Doc. 177 at 56-58). In *Souryavong*, Cynthia Pollick, Esq., represented the plaintiff and Harry Coleman, Esq., represented the defendant. Mr. Colement presented the affidavit in opposition to Ms. Pollick's motion for attoney's fees and costs. (*See* Doc. 177.) In his Declaration, Mr. Lavery specifically addressed the rate requested by Ms. Pollick ($400/hour, a rate she averred she had been previously awarded (*see* 3:13-CV- 1534-ARC, Doc. 163 at 2-3)), and stated that "[t]he community billing rate

9

charged by attorneys of Attorney Pollick's skill and experience, performing work of similar complexity to this case, would be substantially less than that of an experienced civil rights and employment litigator." (Doc. 43-9 at 3 ¶ 7.) He identified the rate charged by "attorneys of Attorney Pollick's skill and experience, performing work of similar complexity to this case, would range from $225-$275 per hour." (*Id.* ¶ 9.)

Defendant also cites cases in which Ms. Gelb was awarded less than the amount requested here. (Doc. 43 at 12.) He first cites to *Fryer v. Noecker*, Civ. A. No. 00-CV-1924 (M.D. Pa. Dec. 5, 2000), in which Ms. Gelb was awarded an hourly rate of $250 per hour. (*Id.*) Defendant also points to *Sershen v. Cholish*, Civ. A. No. 3:07-CV-1011 (M.D. Pa. Apr. 28, 2010) (Caputo, J.), in which Ms. Gelb was awarded $350 per hour. (*Id.*) Defendant asserts that the former establishes a reasonable rate for Ms. Gelb while the latter was awarded in a case where the Court noted that defendants' "'brief was not accompanied by any affidavits or records that would suggest a reasonable ratee. As such, this Court is bound to accept plaintiff's claims that the rates sought are reasonable.'" (*Id* (quoting *Sershen*, Civ. A. No. 3:07-CV-1011, Doc. 136 at 10).)

Considering the parties' arguments in the legal framework set out above, the Court first concludes that Plaintiff has not established a prima facie case that the prevailing rate in the Wilkes-Barre/Scranton area is $400 per hour. Mr. Dyller states that his rate is $450/hour, he has obtained affidavits that this is the prevailing market rate in the Wilkes-Barre/Scranton area, and his request for that rate was ultimately reduced by the District

Court to $375/hour.³ (Doc. 32-2 at 2 ¶ 4.) He adds that, when his rates were $400/hour, $350/hour, or $300/hour, he had no trouble obtaining affidavits that these amounts were reasonable. (*Id.* at 2-3 ¶ 5.) He goes on to state that he "has gotten the agreement of defense counsel that $375 is completely reasonable and consistent with the prevailing market rate in the Scranton/Wilkes-Barre area." (*Id.* at 3 ¶ 5.) This evidence does not satisfy Plaintiff's burden of showing that $400 per hour is the prevailing rate in the relevant area.

Plaintiff's two additional Affidavits are also problematic: because Mr. Dempsey and Mr. Gallagher did not provide their own hourly rates and they focus on their *belief* that a rate of $400 is the prevailing rate and is reasonable (Doc. 32-3 at 2 ¶¶ 10, 11; Doc. 32-4 at 2 ¶¶ 10-11), their Affidavits do not satisfy Plaintiff's burden of establish the prevailing market rate in the Wilkes-Barre/Scranton area. *See Mulero v. Walsh*, Civ. A. No. 3:15-CV-1406, 2018 WL 1084235, at *12 (M.D. Pa. Feb. 28, 2018) (Caputo, J.).

The Court also rejects the evidence proffered by Defendant. Mr. Lavery's affidavit relates to a specific attorney in a case and, without proper analogy, *see Katona*, 2019 WL 636979, at *3, the Court does not consider the affidavit relevant. Mr. Lavery specifically stated that "[t]he community billing rate charged by attorneys of Attorney Pollick's skill and experience, performing work of similar complexity to this case, would be substantially less

---

³ Mr. Dyller discloses that he is Ms. Gelb's brother-in-law. (Doc. 32-2 at 1-2 ¶ 2.) He states that the relationship has no bearing on anything contained in his affidavit. (*Id.*) The Court has no reason to doubt this statement.

than that of an experienced civil rights and employment litigator." (Doc. 43-9 at 3 ¶ 7.) Here no evidence has been presented that Ms. Gelb is not an experienced civil rights litigator. Therefore, Mr. Lavery's suggested rate of $225-$275 (*id.* ¶ 9) has no bearing on this case. Further, Defendant's conclusory assertion that Ms. Gelb's "experience and skill level warrants an hourly rate between $250.00 to $300.00" (Doc. 43 at 12) is not based on evidence that this is the prevailing market rate for an attorney of Ms. Gelb's skill and experience.

Defendant's focus on Ms. Gelb's award in *Fryer* on December 5, 2003, of $250 per hour over that of the 2010 award in *Sershen* of $350 per hour is unavailing. First, although Defendant correctly quoted the Court's comment about the defendants' failure to provide adequate evidence, the Court did so after noting that the defendants' counsel had asserted that he was being paid far less than the plaintiff's attorney. *Sershen*, Civ. A. No 3:07-CV-1011, 2010 WL 1754485, at *5 (M.D. Pa. Apr. 28, 2010) (Caputo, J.). More importantly, the Court was obliged to review the plaintiff's fee request for reasonableness, *see, e.g.*, *Benjamin v. Dep't of Public Welfare of Com. of Pennsylvania*, Civ. A. No. 1:09-CV-1182 2014 WL 4793736, at *8 (M.D. Pa. Sept. 25, 2014), and the Court specifically did so, stating "[h]ere, Plaintiff has met her burden of establishing that her attorney's sought after rates are reasonable by way of affidavits from her own attorneys and the affidavits of several practicing attorneys from this area." 2010 WL 1754485, at *5. Therefore, in *Sershen*,

Judge Caputo found Ms. Gelb's request to be compensated at a rate of $350 per hour reasonable where he had awarded a lower rate approximately seven years earlier. *Id.*

With these findings, the Court will proceed to "consider its own knowledge and experience concerning reasonable and proper fees," *Norman*, 836 F.2d at 1303, and will form an independent judgment on the appropriate hourly rate, i.e., the prevailing rate in the forum of the litigation. The Court need not look far to establish what has been found to be an appropriate rate in this forum in similar litigation. As set out above, Judge Caputo determined $350 per hour to be a reasonable rate for Ms. Gelb in April 2010. *Sershen*, 2010 WL 1754485, at *5. Approximately seven years later, on March 9, 2017, Ms. Gelb filed the pending motion in which she seeks a rate of $400 per hour. Although Mr. Coleman avers that a rate of $250-300/hour is appropriate for an attorney of Ms. Gelb's skill and experience (Doc. 43 at 12), certainly *Sershen* provides a better indication of what would be an appropriate rate here. However, keeping in mind that Judge Caputo awarded the $350 rate in 2010, the finding that *Sershen* is a more appropriate comparator than *Fryer* does not end the Court's inquiry.

Looking to comparators in a more recent timeframe, the Court finds that *Mulero* provides useful guidance though Ms. Gelb was not involved in the case. In *Mulero*, Plaintiff Bernie Mulero's Motion for Attorneys' Fees and Costs was filed on September 28, 2017 (Civ. A. No. 3:15-CV-1406, Doc. 74), just a few months after the fee request at issue was filed. In *Mulero*, Mr. Coleman represented the plaintiff and requested an hourly rate of

$400.⁴ 2018 WL 1084235, at * 13. In so doing, he provided an affidavit from Mr. Dyller among others.⁵ *Id.* Judge Caputo found that Mr. Coleman had "failed to produce sufficient evidence to satisfy his burden of establishing a prima facie case that his requested hourly rate of $400 is consistent with the prevailing market rate." 2018 WL 1084235, at * 13. He therefore conducted his own analysis to determine what award was reasonable. *Id.* (citing *Carey v. City of Wilkes-Barre*, 496 F. App'x 234, 237 (3d Cir. 2012)). Judge Caputo rejected the requested $400, finding it to be above the prevailing market rate and thus greater than reasonable. *Id.* at 14. Rather, he determined that the defendant's suggested rate of $375 per hour was reasonable. *Id.* at 14. He found Mr. Dyller and Mr. Coleman to be attorneys of similar skill and experience: they both focused their practices on civil rights, they had both practiced in the Middle District, and they both traditionally charged clients at the hourly rate of $450. *Id.* Other than the hourly rate normally charged (Ms. Gelb said she regularly bills at $400/hour (Doc. 31 at 5 ¶ 28)), Ms. Gelb has similar skill and experience, she has practiced for over thirty years and for over twenty years her focus included civil rights, and she has practiced in the Middle District for this period of time. (Doc. 31 at 5-6 ¶ 29.) Mr. Coleman acknowledges that Ms. Gelb is "a fine attorney" and he has not

---

⁴ *Mulero* cited Mr. Coleman's declaration in *Borrell v. Bloomsburg University*, 207 F. Supp. 3d 454, 509 (M.D. Pa. 2016), where he had explained that an attorney is a civil rights case in Luzerne/Lackawanna County would receive $350 per hour for a civil rights case. 2018 WL 1084235, at *13. Plaintiff also provides this Declaration which is dated August 10, 2015. (Doc. 50 at 1-4.)

⁵ In his Declaration, Mr. Dyller said "I understand the Mr. Coleman's hourly rate is $400 per hour." (3:15-CV-1406-ARC Doc. 74-2 at 2 ¶ 4.) However, in his own Declaration, Mr. Coleman had stated that his hourly rate was $450. (3:15-CV-1406-ARC Doc. 74-1 at 4 ¶ 14.)

14

differentiated his experience from hers. (Doc. 43 at 15.) Thus, the Court does not have a meaningful basis upon which to differentiate the rationale provided by Judge Caputo in *Mulero* and the case at bar. *See* 2018 WL 1084235, at *13-14. This is particularly so given Judge Caputo's determination seven years earlier that Ms. Gelb should be compensated at a rate of $350 per hour. *Sershen*, 2010 WL 1754485, at *5. These considerations lead the Court to conclude that an hourly rate of $375 is reasonable here and this will be the rate used to calculate the lodestar amount. *Id.* at 14.

As this Court has previously explained, the rate determined to be reasonable on the facts of this case and the presentations of the parties should not be understood by Plaintiff's counsel or opposing counsel that the same hourly rate will be applied in any pending or future case in which Plaintiff's counsel is involved. (*See Davis v. Fox*, Civ. A. No. 3:12-CV-1660, Doc. 173 at 3 (M.D. Pa. Nov. 9, 2016). "The determination of what constitutes 'reasonable attorney's fees' in any given case will remain a determination made on a case by case basis . . . . In short, the hourly rate [established] as a reasonable attorney's fee in this case is neither a ceiling nor a floor in subsequent cases." (*Id.* at 4.)

B.  **Number of Hours**

In response to Ms. Gelb's request, Defendant asserts that Ms. Gelb's fee petition filings "are so inadequate and incapable of proper scrutiny that this Court cannot intelligently determine if the hours claimed . . . applied to the plaintiff's claims against Smith or against the co-defendant Oswald." (Doc. 43 at 9.) In support of a reduction in the number of hours

billed, Defendant provides an exhibit specifically challenging several billing entries. (Doc. 43-2 [Def.'s Ex. A].) Referencing the Exhibit, Defendant again contends that the lack of specificity provided in Ms. Gelb's Itemized Statement leaves the Court unable to discern whether the time expended related to Defendant Smith or Defendant Oswald and "an outright reduction in half the hours claimed" is warranted. (Doc. 43 at 21-23 (citing Def.'s Ex. A [Doc. 43-2]).) Based on the identification of 50.5 hours which Defendant claims are not specific enough to make the requisite determination, he asserts that only half of those hours should be attributed to Ms. Gelb's representation of Defendant Smith. (Doc. 43 at 23-25; Doc. 43-2.) In other words, her claim of 110.5 hours should be reduced by 25.25 hours for a total of 85.25 hours. (*Id.*) Ms. Gelb presented her own affidavit in which she stated she had gone through her itemized statement and "voluntarily deducted the hours attributable to Defendant Oswald" and her hourly rate is $400. (Doc. 31 ¶ 23.) In her reply brief, Ms. Gelb reiterates this assertion, and maintains that all 50.5 hours pertained to Defendant Smith and/or to the case as a whole. (Doc. 46 at 8.) The Court agrees that these hours are properly included in Plaintiff's request for attorney's fees given the facts of this case and the nature of the action.

"The allocation of fee liability is a matter that is committed to the district court's discretion." *Koster v. Perales*, 903 F.2d 131, 139 (2d Cir.1990) (citing *Hensley*, 461 U.S. at 437); *see also Robles v. U.S. Envtl. Universal Servs., Inc.*, No. Civ. A. 09-2377 SDW, 2012 WL 1033040, at *4 (D.N.J. Mar. 26, 2012) (quoting *Koster*, 903 F.2d at 139). In discussing

16

the allocation of fees under § 1988, the Circuit Court for the District of Columbia, noted that "[t]o insure that a private attorney is fully compensated, '[i]t is frequently appropriate to hold all defendants jointly and severally liable for attorneys' fees in cases in which two or more defendants actively participated in a constitutional violation.'" *Turner v. D.C. Bd. of Elections & Ethics*, 354 F.3d 890, 897 (D.D.C. 2004) (quoting *Herbst v. Ryan,* 90 F.3d 1300, 1305 (7th Cir.1996)). Turner added that "if claims are not attributable to all defendants and are not centered on a set of common issues, i.e., claims that are truly fractionable, fees should be apportioned[] in order to ensure that a defendant is not liable for a fee award greater than the actual fees incurred against that defendant." *Id.* at 898 (internal quotation marks and citation omitted).

First, Ms. Gelb has stated in both her original affidavit and supplemental affidavit that her itemized statement does not include any time solely attributable to Defendant Oswald.[6] (Doc. 31 at 4 ¶ 23; Doc. 47 at 1 ¶ 3.) To discount these statements would be to impugn Ms. Gelb's integrity, and the Court has no reason to do so. Therefore, with Ms. Gelb's pending motion for fees, the Court has no basis to conclude that Defendant Smith is being made liable for time specifically expended in advancing the litigation solely as to Defendant Oswald.

---

[6] Plaintiff has identified a total of 24.6 hours attributable solely to Defendant Oswald. (Doc. 49 at 6 (19.2 hours); Doc. 61 at 4 (5.4 hours).)

17

Second, Ms. Gelb's argument that all 50.5 hours questioned by Defendant pertained to Defendant Smith or the case as a whole (Doc. 46 at 8) is consistent with the statement of the case and allegations against Defendants found in the Complaint (Doc. 1). The factual allegations set out in the Complaint present a narrative wherein Defendants Smith and Oswald interacted with Defendant at basically the same time and are alleged to have violated the same constitutional rights in the same manner. (Doc. 1 at 6-14 ¶¶ 32-87.) In this context, advancing Plaintiff's case "as a whole" is both logical and appropriate. Plaintiff correctly quotes *Hensley* regarding the division of hours in such a case, stating the law is clear that where a plaintiff's claims involve a "common core of facts" or are based on "related legal theories, much of counsel's time will be devoted generally to the litigation as a whole making it difficult to divide the hours expended on a claim-by-claim basis." (Doc. 46 ay 8 (quoting *Hensley*, 461 U.S. at 434-35).)[7]

Defendant cites no authority to support his position that he should not be liable for hours spent in the advancement of the litigation as a whole. Given the Court's March 3, 2017, Order allowing for fees incurred to that date, *see supra* n.5, the common set of facts and issues in this case, and the general propriety of joint and several liability in a § 1988 fee award in the factual scenario presented here, Defendant's requested division of the hours

---

[7] The Court's March 3, 2017, Order allowing for "reasonable attorney's fees on the claim against Defendant Smith incurred to date" (Doc. 26 at 1), does not contemplate a division of hours spent advancing the litigation as to both Defendants.

contested is not appropriate. Therefore, the Court rejects Defendant's suggested reduction in hours.

With this determination, the Court is mindful of Plaintiff's settlement with Defendant Oswald shortly after the filing of the pending motion. While a potential windfall for counsel may warrant apportionment of fees in certain factual situations, *see Halderman v. Pennhurst State School and Hosp.*, 725 F. Supp. 861 (E.D. Pa. 1989), here Defendant suggests no such windfall.[8] Although Defendant generally avers that Plaintiff's motion is an attempt to secure a windfall attorney's fee award which is not allowed under § 1988 (*see* Doc. 43 at 1, 8, 10, 14 (citations omitted)), he makes no specific argument on the issue. Rather, he states conclusorily that "[i]f the amount requested was granted by the Court, this would result in a windfall to Plaintiff's attorney." (*Id.* at 43.) Defendant's subsequent arguments as to why the award should be reduced do not relate to Plaintiff's settlement with Defendant Oswald.[9] (*See* Doc. 43 at 17-27.) Therefore, Defendant has provided no adequate basis to support a reduction in the number of hours expended.

---

[8] Courts have recognized that a possibility of a plaintiff's future recovery if the plaintiff prevails against a remaining defendant is speculative but may create a windfall which should be addressed if such a windfall occurs at a later date. *See, e.g., Z.F. by & through M.A.F. J.F. v. Ripon Unified Sch. Dist.*, No. 2:10-CV-00523, 2017 WL 1064679, at *8 (E.D. Cal. Mar. 21, 2017); *see also Corder v. Gates*, 947 F.2d 374, 383 (9th Cir. 1991) (whether later settlement created windfall was matter for district court to discern based on specific facts of the case).

[9] Defendant was aware of the settlement when he filed his responsive brief (Doc. 43 at 3), though he did not learn of amount of the settlement until later when Plaintiff's counsel emailed him on May 3, 2017 (Doc. 46 at 25-26 & n.12). It is noteworthy that Defendant did not mention the settlement in identifying reasons he sought to file a sur reply brief in the motion filed on May 25, 2017. (*See* Doc. 64.) Further, Defendant states that "it is doubtful" that Plaintiff's counsel double billed for tasks identifies (Doc. 43 at 24), and, as

19

Finally, the Court does not find that additional considerations and repetitive arguments identified in Defendant's brief are persuasive of his position that Ms. Gelb is entitled to a fee award lower than that indicated by the lodestar method. (*See* Doc. 43 at 13-21.)

## IV. CONCLUSION

For the reasons discussed above, Plaintiff's Motion for Costs and Attorney's Fees (Doc. 29) will be granted in part and denied in part. Plaintiff is awarded attorney's fees of $41,437.50 based on the requested 110.5 hours at the rate of $375 per hour rather than the requested $400 per hour. Plaintiff is also awarded costs of $842.05. Thus, Plaintiff will be awarded fees and costs totaling $42,279.55. An appropriate Order is filed simultaneously with this Memorandum.

Robert D. Mariani
United States District Judge

---

discussed, there is no suggestion of double compensation via a windfall resulting from the later settlement with Defendant Oswald.