THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JASON FINNEGAN, :
:
    Plaintiff, :
v. : 3:16-CV-1416
: (JUDGE MARIANI)
MICHAEL SMITH and :
ERICA OSWALD, :
:
    Defendants. :

## MEMORANDUM OPINION
## I. INTRODUCTION

Here the Court considers "Plaintiff's Motion for Reconsideration of the Court's March 5, 2019 Order (Doc. 72) Pursuant to Court Order Dated March 20, 2019 (Doc. 75)" filed on March 25, 2019 (Doc. 78) ("Motion" or "Motion for Reconsideration"). On March 5, 2019, the Court awarded Plaintiff attorney's fees of $41,437.50 based on 100.5 hours at the rate of $375 per hour and costs of $8,442.05 for a total award of $42,279.55. (Doc. 72.) In so doing, the Court reduced Plaintiff's requested hourly rate from $400 per hour to $375 per hour for reasons set out in the March 5, 2019, Memorandum Opinion. (Doc. 71.) With the Motion for Reconsideration, Plaintiff seeks an additional award of costs and attorney fees to include the costs and fees generated in securing the initial award of costs and fees. (Doc. 78 at 7.)

At the time Plaintiff filed the Motion, she identified the amount of unreimbursed fees and costs generated from March 13, 2017, to March 25, 2019, to be $32,418.45. (*Id.* at 7

(citing Exs. 8, 20, 21 (Docs. 51, 65-1, 78-3)).) She seeks reimbursement for attorney's fees at the rate of $375 per hour, the rate the Court previously determined to be appropriate. (Doc. 78 at 5 ¶ 17.) Plaintiff's averment that she is entitled to all fees incurred in litigating the fee petition includes fees incurred after the filing of the Motion for Reconsideration. (*Id.*) In briefs and Exhibits subsequently filed, Plaintiff claims an additional $6,787.50 in fees. (*See, e.g.*, Doc. 94 at 2.) Thus, Plaintiff seeks a total award of $39,205.95 in additional fees and costs. (*Id.*)

## II. ANALYSIS

In the award of fees, the Court did not consider fees beyond what was requested in the original fee petition. The initial award included attorney's fees for 12.5 hours expended in preparation and filing of the March 9, 2017, fee petition (Doc. 29). (*See* Doc. 32-1 at 15-16 (Ex. 1, Itemized Statement ending on March 9, 2017, March 6th through March 9th entries).) Plaintiff alleges that the Court erred in not awarding fees incurred after the March 9, 2017, filing in litigating the fee application as such fees are recoverable pursuant to *Planned Parenthood of Central N.J. v. Attorney General of N.J.*, 297 F.3d 253, 268 (3d Cir. 2002). (Doc. 79 at 5.)

The Third Circuit Court of Appeals affirmed the principle that a litigant is entitled to the fees incurred in litigating a fee petition in *United States ex rel. Palmer v. C&D Technologies, Inc.*, 897 F.3d 128, 141 (3d Cir. 2018) (citing *Prandini v. Nat'l Tea Co.*, 585 F.2d 47, 53 (3d Cir. 1978) ("[T]he time expended by attorneys in obtaining a reasonable fee

is justifiably included in the attorneys' fee application, and in the court's fee award.")).

Palmer directed the District Court to consider the request for fees incurred in litigating the fee petition as follows:

> The District Court should proceed in two steps: (1) as with all fee petitions, it must first determine whether the fees on fees are reasonable; and (2) once the reasonability analysis is complete, the Court must consider the success of the original fee petition and determine whether the fees on fees should be reduced based on the results obtained. See Maldonado [v. Houstoun, 256 F.3d 181, 188 (3d Cir. 2001)] (applying the limited success fee reduction rationale to the court's consideration of fees generated in the litigation of a fee petition). Notably, the reduction analysis for the fees generated from litigating the fee petition is independent from the reduction analysis applied to the underlying litigation. See Institutionalized Juveniles v. Sec'y of Pub. Welfare, 758 F.2d 897, 924 (3d Cir. 1985) ("[T]he fee reduction rationale of Hensley [v. Eckerhart, 461 U.S. 424 (1983)], because it is intended to ensure the award of a reasonable fee in light of the results obtained, applies by force of the Court's reasoning to fees generated in the litigation of a fee petition, and compels us to treat the fee petition litigation as a separate entity subject to lodestar and Hensley reduction analysis.").

Palmer, 897 F.3d at 142.

Defendant Michael Smith ("Defendant') does not dispute the authority cited or oppose the basic premise that Plaintiff is entitled to fees and costs generated to prepare and support the fee petition. (See Docs. 82, 93.) Rather, Defendant's argument goes to the reasonableness of the amount requested: Defendant requests that the Court reduce the "fee on fee demand consistent with what the Court should determine to be reasonable hours for Plaintiff's counsel and award Finnegan only those recoverable fees that this Court can properly analyze and deem reasonable." (Doc. 82 at 4.) With his specific objections to Plaintiff's itemized statements, Defendant objects to many entries on the basis that the task

3

identified is not relevant to the fee petition or the entry is incapable of intelligent review. (Docs. 81, 81-1, 81-2.) In addition to alleging that numerous entries contained in Plaintiff's itemized fees on fees request are specifically objectionable, Defendant maintains that "the entire request should be viewed as per se objectionable." (*Id.* at 14.)

As to specific objections, both parties recognize the specificity requirement explained in *Washington v. Philadelphia Court of Common Pleas*, 89 F.3d 1031 (3d Cir. 1996), (Doc. 46 at 12; Doc. 96 at 2) where the Circuit Court explained that "our jurisprudence has established that a fee petition is required to be specific enough to allow the district court to determine if the hours claimed are unreasonable for the work performed." *Washington*, 89 F.3d at 1037 (internal quotation and citation omitted).

> "[A] a fee petition should include "some fairly definite information as to the hours devoted to various general activities, e.g., pretrial discovery, settlement negotiations, and the hours spent by various classes of attorneys, e.g., senior partners, junior partners, associates." However, "it is not necessary to know the exact number of minutes spent nor the precise activity to which each hour was devoted nor the specific attainments of each attorney."

*Washington*, 89 F.3d at 1037–38 (3d Cir. 1996) (quoting *Rode v. Dellarciprete*, 892 F.2d 1177, 1190 (3d Cir. 1990)).

The Court is satisfied that Plaintiff's itemized statements which are the subject of the objections (Docs. 51, 65-1, 78-3) identify the task and time expended with adequate specificity. While some early entries relate to the securing of Plaintiff's settlement award from Defendant Smith (*see, e.g.*, Doc. 81 at 1-3), the time is compensable. More importantly, the Court's knowledge of the underlying litigation allows the Court to ascertain

the adequacy of entries which Defendant characterizes as "incapable of intelligent review" and/or "irrelevant to fee petition." (*See, e.g.*, Doc. 81 at 2.) For example, Defendant's objection to time related to Plaintiff's Motion for Clarification filed on April 5, 2017 (Doc. 40) on the basis that the motion was not needed and not relevant to the fee petition (Doc. 81 at 2) is without merit in that the motion seeks to clarify that the action remained open as to Defendant Smith with the Motion for Costs and Attorney's Fees (Doc. 29) pending (Doc. 40 at 2 ¶¶ 3, 4) despite the Court's Order of April 3, 2017, dismissing the case (Doc. 38). Thus, the April 5th motion and related activity are clearly relevant to Plaintiff's fee petition.[1] By way of further example, entries related to Defendant Oswald (*see, e.g.*, Doc. 81 at 3) which may at first appear irrelevant to the fee petition which addresses time related to Defendant Smith, are in fact relevant to the instant petition given Defendant Smith's counsel's argument that Plaintiff's counsel had not excluded time spent related to Defendant Oswald from her fee petition and his request that certain documents related to Defendant Oswald, whom he did not represent, be sent to him (Doc. 84 at 9-10).

The Court also concludes that Defendant's contention that "the entire request should be viewed as per se objectionable" (Doc. 82 at 14) is without merit. First, Defendant's reliance on *Bowden v. DB Schenker*, Civ. A. NO. 1:17-CV-1999, 2019 WL 218786 (M.D. Pa.

---

[1] The fact that Defendant's counsel concurred in the motion (Doc. 40-1) indicates that he did not think that the motion was superfluous at the time his concurrence was sought. Notably, he then requested that the Court deny the motion (Doc. 41 at 2), a change-of-heart indicative of the animosity between Plaintiff's counsel and Defendant's counsel as reflected in the "give no quarter" nature of the parties' litigation of this matter.

Jan. 16, 2019), (Doc. 82 at 8, 14-15) is unavailing. In *Bowden*, Judge Rambo noted "[w]ith regard to the number of hours spent preparing the instant fee petition, 'judges within the Middle District of Pennsylvania have generally awarded fees in the range of 15 to 23 hours for similar petitions.'" *Id.* at *3 (quoting *Cmty. Ass'n Underwriters of Am., Inc. v. Queensboro Flooring Corp.*, Civ. A. No. 10-cv-1559, 2016 WL 1076910, at *9 (M.D. Pa. Mar. 18, 2016) (internal quotation omitted)). The Court does not find *Bowden* analogous to the fee request at issue here: Judge Rambo considered only the hours billed in preparing the fee petition itself, and the opposing party made no objection to the fee petition so no additional time was spent defending the petition. 2019 WL 218786, at *3. As noted above, 12.5 hours of Plaintiff's counsel's time is attributed to matters related to the preparation and filing of the original fee petition. (*See* Doc. 32-1 at 15-16.) Thus, Plaintiff's initial request is below the range identified in *Bowden*.

More to the point of the fees at issue here, the Third Circuit Court of Appeals held in *Washington* that "a court may not diminish counsel fees in a section 1983 action to maintain some ratio between the fees and the damages awarded." 89 F.3d at 1041. In discussing the propriety of limiting a fee award in a civil rights case, the Circuit Court looked to the reasoning of the plurality in *City of Riverside v. Rivera*, 447 U.S. 561 (1986), where Justice Brennan noted that

> "[u]nlike most private tort litigants, a civil rights plaintiff seeks to vindicate important civil and constitutional rights *that cannot be valued solely in monetary terms.* ... Regardless of the form of relief he actually obtains, a successful civil

6

rights plaintiff often secures important social benefits that are not reflected in nominal or relatively small damages awards."

*Washington*, 89 F.3d at 1040 (quoting *Riverside*, 447 U.S. at 574) (emphasis added in *Washington*). The Circuit Court then stated,

> [i]n other words, the monetary amount awarded to the plaintiff would not be an accurate measure of the success achieved by the attorneys in the case, and therefore attorney's fees assessed in proportion to the damage award would not adequately compensate the attorneys for their labor, which the plurality compared to that of a "private attorney general." *Id.* at 575, 106 S.Ct. at 2694 (citation omitted). The plurality concluded that "[a] rule of proportionality would make it difficult, if not impossible, for individuals with meritorious civil rights claims but relatively small potential damages to obtain redress from the courts," *id.* at 578, 106 S.Ct. at 2696, and for this reason rejected such a rule.

*Washington*, 89 F.3d at 1041.

In rejecting a proportionality rule, *Washington* relied on both *Riverside* and the Circuit Court's decision in *Cunningham v. City of McKeesport*, 807 F.2d 49 (3d Cir. 1986), to support the holding set out above: "a court may not diminish counsel fees in a section 1983 action to maintain some ratio between the fees and the damages awarded." 89 F.3d at 1041. However, *Washington* made clear that

> the amount of the compensatory damages award may be taken into account when awarding attorneys' fees to a civil rights plaintiff. . . . [T]he reason why the damage amount is relevant is not because of some ratio that the court ought to maintain between damages and counsel fees. Rather, the reason has to do with the settled principle . . . that counsel fees should only be awarded to the extent that the litigant was successful.

89 F.3d at 1042 (internal quotation and citation omitted).

In the Court's original award of $42,279.55 in fees and costs incurred in connection with Plaintiff's underlying civil rights claims against Defendant Smith which resulted in entry of judgment against him in the amount of $10,000 (Doc. 71 at 2-3), the Court rejected Defendant's conclusory assertion that a windfall for Plaintiff's attorney would result if the number of hours claimed were not reduced (*id.* at 19-20). In so doing, the Court implicitly rejected a proportionality approach to attorney fees, particularly in a civil rights case where the redress of civil rights violations is a factor to be considered as was the case in Plaintiff's claims against Defendants Smith and Oswald. *See Washington*, 89 F.3d at 1041. Moreover, as directed in *Palmer*, at this stage of the proceedings, the question is not the success of the underlying litigation, but rather the success of the initial fee petition and the reasonableness of the time expended in securing the original fees and those later generated. Having determined that the time expended in securing judgment in favor of Plaintiff and against Defendant Smith was not subject to reduction, Plaintiff's original fee petition was successful. (*See* Docs. 71, 72.) Thus, having found the itemized statement entries to be reasonable for activity undertaken beyond that identified in the original fee petition, *see supra* pp. 5-6, Plaintiff's request for fees on fees should not be reduced based on results obtained with the original award. *See Palmer*, 897 F.3d at 142 (citation omitted). Similarly, *Washington's* directive that "counsel fees should only be awarded to the extent that the litigant was successful," 89 F.3d at 1042, also indicates that success on the initial

fee petition removes a basis to reduce the award for fees on fees once the hours expended are found reasonable.

In sum, having carefully considered Defendant's objections to the fee award and thoroughly reviewed Plaintiff's submissions, the Court does not find a reasoned basis for reducing the fees requested. While the fees are significant and the time expended by Plaintiffs' counsel since March 9, 2017, in securing the fee award has increased substantially, a review of the docket shows that the basis for the increase is Defendant's counsel's zealous dispute of numerous itemized entries and Plaintiff's counsel's defense of the time identified in her itemized statements. (*See* Docs. 43, 46-70, 78-94.) Thus, the parties' inability to resolve the matter of an appropriate fee award has resulted in the ongoing generation of fees far above what would have been considered reasonable if an agreement could have been reached at an earlier stage of the proceedings.

These contextual considerations distinguish this case from those where Courts have found fee requests unreasonable. For example, in *Clemens v. New York Central Mutual Fire Ins. Co.*, 264 F. Supp. 3d 618 (M.D. Pa. 2017), where fees were available based on the finding of insurance bad faith, the District Court found the plaintiff's request for attorneys' fees "woefully deficient" and determined that 87% of the hours billed by counsel were to be disallowed, *id.* at 665. Ultimately, the District Court exercised its discretion to deny counsels' request for fees in its entirety. *Id.* at 666. The District Court included in its consideration the plaintiff's request for fees related to 64.5 hours expended to prepare an 8-

page fee petition for attorney's' fees and costs which the court found "unbelievable." *Id.* at 660. In *Clemens*, the plaintiff's fee petition filing with supporting brief and exhibits was thirty-six pages in total. (*See* Civ. A. No. 3:13-CV-2447 Docs. 216, 216.) Here Plaintiff's filing was forty-nine pages in total with approximately 12.5 hours expended. (*See* Docs. 29-32; Doc. 32-1 at 15-16.) Thus, the unreasonableness found in the time spent preparing the initial fee petition in *Clemens* is not indicative of unreasonableness attributable to the time expended by Plaintiff's counsel.

The Court of Appeals for the Third Circuit affirmed the District Court's denial of fees. *Clemens v. New York Mutual Fire Insurance Company*, 903 F.3d 396 (3d Cir. 2018). The Circuit Court noted that the 64.5 hours attributed to the fee petition was "astonishing[]" in that the time was supposedly spent in reconstructing the time records and it was not the defendant's "responsibility to pay for the consequences of counsel's own neglect." *Id.* at 400 n.5. Here the hours expended on the initial, more extensive petition are far less, Plaintiff's counsel kept contemporaneous records, and this Court can find no conduct attributable to neglect on the part of Plaintiff's counsel. As explained above, the fees on fees claimed and documented here are attributable to litigation related to the fee petition which followed the initial March 9, 2017, filing (Doc. 29). Plaintiff cannot be faulted or penalized for responding in detail to the numerous objections lodged by Defendant, and the Court finds no entries patently excessive or unwarranted. Thus, the Court finds no basis to

reduce Plaintiff's current request for fees on fees and additional costs incurred in litigating the fee petition.

## III. CONCLUSION

For the reasons set out above, Plaintiff will be awarded $39,205.95 in fees and costs sought in conjunction with the Motion for Reconsideration and ongoing litigation of the initial fee petition (see, e.g., Doc. 94 at 2). This award consists of attorney's fees of $38,700 based on 103.2 hours at the rate of $375 per hour and costs of $505.95. (See, e.g., Doc. 94 at 2). The award of $39,205.95 is in addition to the initial March 5, 2019, award of $42,279.55. (Doc. 72.) Thus, Plaintiff's total award for attorney's fees and costs is $81.485.50.[2] An appropriate Order is filed simultaneously with this Memorandum Opinion.

*[signature]*

Robert D. Mariani
United States District Judge

---

[2] As discussed in the text, the fee on fee award in this case is significant, see supra p. 9, as is the total fee award when compared with the amount of judgment, see supra p. 8. However, the total award is not outside the bounds of what has been considered reasonable by this Court where a jury in a civil rights case awarded the plaintiff $10,000 and the Court awarded attorneys' fees of $151,627.01. Garbicek v.Janson, Civ. A. No. 3:98-CV-00085, Docs. 154, 208.